May it please the Court, my name is Attorney Ryan Cashvian. I represent the petitioner Min-Sing Jin. I'd like to reserve two minutes of my time for rebuttal, if I may. The Board of Immigration and Appeals committed reversible error in denying Jin's request for asylum, withholding and relief under the Convention Against Torture. There's four reasons for this error. First, a historical document in the record, a medical receipt, conclusively proves that Jin was in China one year... I don't get the conclusively. I can see where it is perhaps probative of something, but we don't know anything about... I can't read Chinese and we don't know anything about what the pharmacy practices are there, but I know there's typically three dates on it, when the pharmacy dispensed it, when the prescription expires and when the pills must be thrown away, typically a year out. And I don't know which date that is on that Chinese form. There's a couple of points I would make on that. First, Your Honor, you talked about the bottle. This was the receipt. Same thing, though. I don't know what the significance of the date is. There's a couple more points. I don't believe that any receipt would have an expiration date, but beyond that, Your Honor, the preprint, the actual Chinese version of it, has preprinted letters on it. And those are the 2004 and one quarter that's on it. And in the handwritten translation, it wasn't translated into American date format as it was with the October date. It was actually left as 2004 with a space and then one and a forward slash four. That clearly indicates that it wasn't translated as a date by the interpreter. Counsel, I'm going to, with Judge Kleinfeld's indulgence, ask on a different topic because I think there's a serious question whether we have any jurisdiction to consider the timeliness question. And I'd appreciate your addressing the adverse credibility finding, which to me seems like, just from my own perspective, the heart of the issue in this case. And in particular, I'm wondering why, in your view, none of the reasons given regarding inconsistency or the absence of corroboration are sufficient under our pre-real ID case law? The reasons? Well, first, Your Honor, the reasons that I think this Court needs to look at are only the reasons identified by the BIA. And not What's wrong with those? That's what I'm Well, for timeliness, it only identified Not on timeliness. I want to know about credibility only, why they didn't believe her. Well, with regard to, in her main case in chief for withholding an asylum, the BIA only identified two matters. And that was that she, her demeanor finding, and it only identified two of the demeanor findings by the IJ. And it also stated that she was inconsistent with regard to the date that she was baptized. Why isn't the baptism issue enough to be substantial evidence on the record as a whole, the Some of these other things, I thought, were not terribly persuasive. But if somebody's reason for being, for needing asylum is that they have become a Christian, you would think the religion would be important to them and that they'd remember when they were baptized, their adult baptism. That I don't get. Well, there's two reasons, Your Honor. The first reason is that the case law in this case are not that material, especially when they're long after. You're referring to Wren? Yes, Your Honor. And this was six years after the fact. And she wasn't wrong Some dates are, some aren't. If I ask you about just some occurrence in law school, the likelihood you'd remember the date would be negligible and the likelihood it would bear on credibility would be negligible. If I asked you your date of birth and you gave inconsistent answers, that's a long time ago, but inconsistency would be telling. Yes, Your Honor, but I don't think this is material because it doesn't go to her persecution. It's a couple of steps removed from her persecution. It's when she was baptized. And she got the month and day right, she just got the year wrong. We all make mistakes about years. And then she actually corrected herself. And I think there's a case that's tried to impeach the petitioner who said that his father had come in America on a certain year and the government tried to impeach him. And then he quickly corrected himself and said, no, no, I made a mistake. It was actually this year. And the court said that that type of inconsistency didn't show that the person had any kind of motive to lie. He was just correcting himself. And it's the same thing here. Did she correct herself? She did correct herself. Right during that same set of questions and answers? Or was it later in the dialogue? Well, it was when the government was trying to impeach her that she quickly corrected herself and said, no, no, I made a mistake. And that's the same set of issues that were in the Sindhu case where it was not during the same set of questions, but it was a little far removed. And the petitioner had corrected himself. So I think that case is directly on point. And I don't think it's a major inconsistency. There is one other thing that both the immigration judge and the BIA relied upon, and that was the absence of corroboration. And our pre-Real ID Act cases on that have never been completely clear to me. But I wonder if you would comment on why that is not an appropriate reason. The BIA said that your client didn't provide a reasonable explanation for failing to obtain corroborative evidence. What's wrong with that? I don't believe the BIA actually addressed any of her explanations for why she didn't have any corroborative evidence. Well, they said that they weren't persuasive, so they thought about them. But they just said that she hadn't provided corroboration of her religious affiliation. Well, a couple of points, Your Honor. The explanations she gave were sufficiently good to explain why she didn't have documentation. For instance, requiring a Christian to have a baptism certificate, I don't think that there was any evidence that Christians, especially Chinese Christians, need to have some form of certificate. So that reason that she didn't have a certificate is not sufficiently It's speculative. It's speculative and it's conjecture. The other issue is that the immigration judge said, well, her pastor in America didn't know if she was actually baptized. The pastor was being honest. He said, I'm not the person who baptized her, so I can't tell you if she's baptized. So there is no other way other than getting the person from China who baptized her to come here and testify. And she wasn't asked to bring that information. She wasn't given an opportunity to bring that information. It was more of a surprise to just bring that honor. Is the baptism such an absolutely critical factor? I mean, if a person says and can establish they have a genuine religious belief, and because of baptism we'll say Christian belief, is it necessary to that Christian belief that there be a baptism? I think, Your Honor, it would be speculative both at this level and at the BIA and in the determination that there needs to be a baptism certificate and no other... You may have misunderstood Judge Ebel's question, and if your indulgence, rephrase it. Is there anything in the record that suggests that every Christian, in order to be a Christian, has to be baptized or has to have, and a fortiori, wouldn't have to have a certificate? Or can you just decide you're going to be a Christian without being baptized? There's nothing in the record that says that you need to have a baptism certificate to be Christian. Without the certificate, do you have to be baptized? Or can you just decide to become a Christian? There's nothing in the record that says that you need to be baptized to be a Christian, Your Honor. But she said she was baptized. Yes, that's correct. But... I think the question was, and correct me if I'm wrong, is what kind of evidence would I saw it as going a little deeper here. When I read her testimony, it looked like there are no straight answers to questions. Everything's all over the place. Everything's vague. Everything changes. And it was perfectly understandable to me why the I.J. decided she's not telling him the truth. Now I could think of other explanations. She might not be that bright. She might be suffering from some sort of disorder. She might be just frozen with anxiety because of the circumstances. But the test is not whether we can think of other explanations. The test is whether there's substantial evidence on the record as a whole. And I don't see why her general evasiveness plus her failure to corroborate something as central to her claim as her baptism as a Christian isn't enough under that very liberal administrative law test. I see that my time is up. Would you like me to answer your question? Please do. I think the test in this case, specifically with the evasiveness and her general responses, is the lack of a sufficient demeanor finding that addresses what type of characteristics gave weight to those vagueness. The judge didn't say, I saw her move. She seemed red. She seemed flustered. He didn't give any concrete explanation as to why he thought she was lying when she said those things. So the lack of a concrete demeanor finding clearly establishes that the evasiveness is those other factors. If the judge wanted to point to something and say, you know, she was being evasive. She was hesitant. When I looked at her, her eyes moved. Then I would agree that there was vagueness, but I do not see anything in the record by the immigration judge establishing anything with regard to her demeanor that would warrant that finding, Your Honor. Thank you, Counsel. We've reduced a lot of your time with questions, so you may still have a minute for rebuttal when the time comes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Jem Sponza on behalf of the Respondent. This Court's decision in situ also stands for the proposition that where the Court does not know what, where the agency does not know what to believe, an adverse credibility finding may be rightly reached. That is exactly what we have. But that's not what the BIA said. They didn't rely on that reason. They did not. And so we're limited to reviewing what they said, correct? Correct, Your Honor. And also, this is a pre-Real ID Act case. It is. Is that also correct? Yes. So it's a little harder for the government to prevail with an adverse credibility finding than it is now. It is, Your Honor. And also, Ninth Circuit law says that a non-credibility determination has to be documented with specificity. You can't just say, I just had a bad feeling about this person. Correct, Your Honor. It's the government's position that just such specificity is evident in the agency decisions we have in this case. With respect to Petitioner's demeanor, the immigration judge went to great lengths throughout her testimony to remind her that it was her burden to provide persuasive testimony establishing her claim. And in his decision, as affirmed by the Board, noted that Petitioner's answers were searching. Let's focus on this withholding of removal. What specific basis for lack of credibility did the I.J. say was being relied upon? Inconsistency with respect to the date and manner of her entry, her departure from China and entry into the United States. So that inconsistency flowed through and that credibility flowed through to all of her claims. Correct, Your Honor. That's one. It's difficult in this case to separate out one specific. So you've listed one. Correct. What other specifics did he say why he made a credibility? As Your Honors have noted, inconsistency with regard to the chronology of Petitioner's baptism and her foundation of a house church. That's two. Anything else that the I.J. said? Her inability to explain her, the proffered significance of the medical receipt. That's a significant inconsistency relied upon. She tried to explain it. Why is that an inconsistency as opposed to just not getting to a comprehensible answer? That isn't necessarily inconsistent. It may be incomplete or unhelpful, but why is it inconsistent? It could be cast as not getting to a comprehensible answer, but again, the fundamental problem in this case is that at each turn, the agency did not know what version of events. They didn't ever say that. You're saying that and that is a permissible ground, but that is not what the immigration judge said and it's not what the BIA said. They said we don't believe her because and then listed specific reasons. They didn't say we don't know what to believe. Everything's in equipoise and it's a burden of proof problem. That isn't what they did. So were there other inconsistencies that, in your view, the BIA relied upon? The demeanor finding, as Your Honors have noted, and again, I apologize if I misspeak, but my intent in mentioning that this is a case in which it's just unclear what happened, if anything, is that all of that kind of collapses into the demeanor finding reached in this case. Counsel, what bothered me most about the BIA decision was some of the inconsistencies they mentioned struck me as not bearing on credibility. For example, sometimes she called the country the Soviet Union and sometimes she called it Russia. Correct. Well, back when it was the Soviet Union, people used to mistakenly call it Russia all the time. And now that it's Russia again, you hear people frequently calling it the Soviet Union. Back in the 60s, if you called it Russia, you were considered an uneducated adult. And now if you call it the Soviet Union, you're considered to be kind of not quite on top of things. And the same thing about the airport she passed through. I mean, I've been in international transit lounges in these airports, and unless it's like Whitehorse in the Yukon Territory, they all look alike. We agree. And we acknowledge Petitioner's explanation that having grown up in China, that is why she misspoke. But the agency's concern was... Well, those are the first two things they list. The only thing here that really grabbed me, as you know, is the baptism. Correct. If religion is important enough to you so that you'll practice it despite your country's government being hostile to you if you practice it, if you face persecution for your religion, you'll remember when you got there. Correct. So the baptismal certificates seem really important. Do we know... I don't... I'm trying to think. Would there necessarily be a baptismal certificate? And would it be among an ordinary person's treasured papers? Perhaps. Setting aside the dearth of a certificate, though, in this case, again, what is key, as Your Honor pointed out, what is key about her testimony with respect to the date of her baptism? Didn't she... I mean, the appellant said that during her examination, she corrected that. I didn't get to probe, but I'll ask you, was that correction as a result of a kind of leading question to her, or was that a spontaneous correction by her? It was not spontaneous at all, Your Honor. It was the result of having the inconsistency between her asylum declaration and her testimony in immigration court pointed out to her. So they said, look, you've made a mistake. And then... So then she said... But did she then have the option of saying, okay, this date or that date? I mean, did somebody say, well, you really meant 03 rather than 04, or 04 rather than 03? Or did they simply say there's an inconsistency? Which is it? And then she chose the correct date. She chose. And the date she chose turns out to have been... So she said... First, she said April 15th, 2002, and then when she was being questioned, she said, no, it should have been 2001. Correct. Are we talking... And that's what you're relying on to say that she's... I mean, that seems really trivial to me. There are cases, Your Honor, in which a misstatement of date does not change the fundamental chronology of events in the case. And that's true here as well. Except... Are we talking about AR 102, 103? Is that what we're talking about? I believe so, Your Honor. I can look and double-check, but I believe that's what we are. That's what I'm looking at, and I was wondering if I'm looking at the right thing. I believe so. Your Honor, what is different about this case is that Petitioner's testimony, her claim, her claim itself turns on her formation of a house church, her decision to form a house church in her home, and take on that additional exposure, if you will. If her testimony is inconsistent with respect to the date of her baptism, when that house church was formed, then the agency is left. But she never said that she had to be baptized before she established the home church. She never said that. In her declaration in support of her asylum application, it's her claim that she was introduced to Christianity, she was baptized, and then decided to form a house church. That is her claim. Once in immigration court... When was the house church formed? Let's get that date compared to the dates of 2001 and 2002. I apologize, Your Honor. I don't want to take up your time. If you don't know it immediately, move on to a different topic. Just make sure we're all looking at the same page. So that's it, 204 and 205 of the certified administrative record. If the house church was formed in 204 or 205... Sorry, administrative record page is 204. I apologize. It was April 7th, 2002. Administrative record 83. In her testimony, she says it was April 7th. And then she was asked, you said you were baptized earlier. You said you were baptized April 15th, is that correct? So you were baptized a week after you set up the home church? No. And then she says my baptism should be 2001. And she had said it was a year between the two. In defending the agency decisions that we have here, all of this has to be taken in context, Your Honor. And having failed to credibly establish when she left China, how she transited from China to Mexico, it's a different situation than just a case in which an individual may have testified consistently to all of those pieces and then misses a year with respect to recounting a date of arrest, for example. It's simply not that case. This inconsistency with respect to the chronology... Wouldn't it be enough for a credibility determination if AJ simply said, look, her demeanor is so obviously invasive that I can't point to one specific piece of testimony, but everything is telling me she's lying. Would we uphold that as sufficient specificity? Perhaps. Perhaps. It again would just depend on the case. On this case, there are numerous inconsistencies relied upon by the agency. Is there a single pre-Real ID Act Ninth Circuit case that would uphold the kind of finding that Judge Ebell just asked you about? Not that I know of offhand, Your Honor. I would be happy to research that point and provide it to the court. I suspect you won't find anything that's that general. Again, it's a theoretical possibility. Each case is assessed on its individual facts, and the agency reaches its determination based on the totality of those facts. Simply, in this case, Petitioner did not credibly and consistently present her claim or the manner in which she left China or when or how she entered the United States. Additionally, her opportunity to provide corroborative documentation or evidence was simply nonexistent on this record. As Your Honors have rightly noted, that medical receipt does not conclusively establish when Petitioner was in China or when she left. Thank you, Counsel. Thank you very much, Your Honors. Before you start, I do have one concern, and it's something that the government's counsel was discussing earlier in her comments. And that is that one of the adverse credibility findings that both the immigration judge and the BIA made had to do with the time, place, and manner of her entry into this country, that her statements were all over the place, and therefore not credible. What is your response to that specific assertion of inconsistency or lack of credibility? I'm sorry, Your Honor. I don't know particularly which one are you talking about. Well, I'm looking at the AR-3, which is page two of the BIA's decision, where the paragraph concludes, we conclude that the immigration judge's adverse credibility finding regarding the respondent's testimony to her time, place, and manner of entry, far from being clearly erroneous, is supported by the record of proceeding. So we discussed earlier the timing of baptism and those things, but now I'd like your response to their reliance on vague or inconsistent testimony about the time, place, and manner of her entry into the United States. I'm sorry, I don't read that sentence the way you have, Your Honor. I think in that paragraph they articulate three reasons why the time, place, and manner is not appropriate, and then specifically says that, I guess, specifically says that the adverse credibility is supported by the record for those three reasons, being the mention of the USSR versus Russia, and also the demeanor finding, and I believe it was one other thing. I think it was the transit dates, where she landed, England versus Germany, and so I think those... You think those are too trivial for them to rely upon? I think those are exactly too trivial, and there's no opportunity to explain those alleged inconsistencies, and to be honest, those are not inconsistencies at all. I mean, going to Germany and then going to England is not inconsistency, it's just an omission, and an omission is not sufficient basis for adverse credibility, as this Court has held. Similarly, there is no... Without regard for how important the omission is? I mean, is that just a per se rule? Well... Omissions can never be a basis of credibility? Well, it depends on the omission, but in this case, it's really trivial. It's not an absolute rule, the way you had articulated it. It sounded like you had to find a commission for credibility, and I just wanted to make sure that you weren't saying that no omission could ever be a basis for credibility. No, Your Honor, I don't think that would be a correct rule. Just a couple more points. I would like to go back to Your Honor's statement with regard to the receipt and the sufficiency of the evidence. I believe this Court's holding in Chawel v. Holder, and it's 599 Federal Reporter, 3rd edition, and the pinpoint site is actually page 8. This Court actually specifically held that strong evidence is not required when there is a requirement for corroborative evidence, and the language that the Court employed in that case was that the I.J. improperly required the petitioner to submit medical records that conclusively established the petitioner's injury resulted in police mistreatment. When appropriate, our case law provides that an I.J. or the B.I.A. can require corroborative evidence. However, our case law does not require such evidence to be strong or conclusive. In this case, I think there's a mixed question of law and fact that the Court has jurisdiction to review with regard to the timeliness. And if we look at the medical receipt, she was required to produce corroborative evidence, and that evidence, I believe, is sufficient under this Court's case law with regard to corroborative evidence to establish she was in China, and she needed no other evidence to disprove that, and it was the burden of the government to disprove that. And with that, Your Honor, I will submit. Thank you, Counsel. The case just argued is submitted. We appreciate very much the helpful arguments from both sides.
judges: Ebel, Kleinfeld, Graber